OPINION OF THE COURT
Walter B. Tolub, J.
Petitioner Sybil Gray moves, pursuant to CPLR article 78, for a judgment reversing respondent New York City Housing Authority’s (NYCHA or the landlord) decision to terminate Gray’s tenancy and for an order, inter alla, requiring that NYCHA grant Gray a new “termination of tenancy” hearing. In addition, Gray seeks an injunction staying the landlord from proceeding with a pending summary holdover proceeding in housing court. On June 23, 2008, this court granted a temporary restraining order staying the housing court proceeding.
In October 2004, petitioner and her adult son moved into an apartment in Bayview Houses, a NYCHA public housing complex in Brooklyn. The monthly rent for the apartment was $495. In December 2004, the Internal Revenue Service placed a lien against petitioner’s paycheck and petitioner was left with less than $500 in salary per month as a result of the hen. It is undisputed that petitioner failed to pay rent from December 2004 through May 2005 when NYCHA instituted tenancy termination proceedings against petitioner based on allegations of chronic rent delinquency. Petitioner was served with notice of the hearing which advised her that she had the right to an attorney or other representative to assist her at the hearing. Petitioner attended the hearing without counsel and admitted to the nonpayment. On August 24, 2005, the impartial hearing officer issued an order terminating petitioner’s tenancy.
Thereafter, in 2006, NYCHA initiated summary eviction proceedings against Gray. During the pendency of the summary eviction proceeding, Gray was referred to Adult Protective Services for a psychiatric evaluation which determined that Gray was suffering from, “Major Depressive Disorder, Single Episode, Severe Without Psychotic Features.” The examining psychiatrist recommended, inter alla, the appointment of a guardian ad *680 litem (GAL) to assist Gray in housing court. Once the GAL was appointed, NYCHA proceeded with the summary holdover proceeding. (Reply, exhibit F.)
Moreover, during this period, petitioner applied for, and in December 2006, she was granted Social Security disability benefits retroactive to March 2006. The Social Security hearing officer found that Gray was suffering from a host of physical disabilities, and depression, which rendered her disabled. (Reply, exhibit G.)
In October 2007, petitioner’s counsel requested that, in accordance with the decision in Blatch ex rel. Clay v Hernandez (360 F Supp 2d 595 [SD NY 2005]), NYCHA grant Gray a new termination of tenancy hearing because NYCHA failed to appoint a GAL to represent Gray at the original August 2005 termination of tenancy hearing (reply, exhibits J, K). NYCHA denied the request (reply, exhibit L), and this article 78 proceeding followed.
The petition alleges that the August 2005 termination of tenancy hearing violated Blatch ex rel. Clay v Hernandez (supra), and that respondent’s May 22, 2008 decision not to reverse the earlier decision was a further violation of Blatch because at the time of the termination of tenancy hearing in August 2005, Gray’s condition should have given rise to an evaluation to determine whether she required a guardian to assist her at that hearing. According to the petition, because NYCHA instituted proceedings against a mentally incapacitated tenant in violation of Blatch, the termination of tenancy hearing and the August 2005 determination were improper. Petitioner alleges that NYCHA’s failure to follow its own termination guidelines violated her federal and state due process rights; title II of the Americans with Disabilities Act; section 504 of the Rehabilitation Act of 1973; and the Fair Housing Act.
NYCHA’s Termination of Tenancy Procedures
NYCHA is a governmental entity created to provide housing for low-income families in New York City. In accordance with its state and federal powers, NYCHA can take administrative action to terminate the tenancies of tenants who are chronically delinquent in the payment of their rent. The administrative procedures were developed to comply with the due process requirements set forth in Escalera v New York City Hous. Auth. (425 F2d 853 [2d Cir 1970], cert denied 400 US 853 [1970]).
*681 Chapter V § VI of the NYCHA Management Manual discusses procedures to be followed by NYCHA in the event of a tenant’s rent delinquency. Section VI (D) (3) (at 29) states:
“Since collection of rent is one of the most important functions of management staff, it is necessary to maintain a constant follow-up of delinquent accounts. At the first sign of rent delinquency, the tenants should be called to the office or interviewed at their apartments by the Housing Assistants in order to ascertain the reason for delinquency . . . “Problems contributing to the delinquency should be determined, and, where necessary, referrals made to the appropriate public or private social agencies. All interviews must be recorded in the tenant folders” (answer, exhibit 3).
Chapter VII, § IV (C) (1) (at 14) of the NYCHA Management Manual, which outlines the procedures related to termination of tenancy for, inter alla, chronic rent delinquency states that before considering referral of a chronic rent delinquency case, “the Manager or Assistant Manager must first interview the tenant in order to discuss the problem(s) . . . seek to ascertain the facts involved and, when appropriate, try to assist the tenant by securing outside help” (answer, exhibit 3).
Moreover, section 2 of NYCHA’s termination of tenancy procedures requires the project manager or his representative to interview the tenant to discuss the problem, in this case the chronic rent delinquency, in order to ascertain the facts involved and, when appropriate, to try to assist the tenant by securing outside help.” (Answer, exhibit 2, at 1, § 2.)
It is undisputed that NYCHA’s General Memorandum 3630 (GM 3630), entitled “Termination of Tenancy: Mentally Incapacitated Tenant” was in effect at the time termination of tenancy proceedings were instituted against Gray. That memorandum establishes the procedure for a housing manager’s referral of a tenant suspected of having a mental disability to NYCHA’s Social Services division. The memorandum defines “mentally incapacitated” by reference to circumstances when, based on information in the tenant’s file or personally known to NYCHA personnel, it appears that:
“As a result of mental disease or defect the tenant:
“May be unable to provide for his/her needs and is likely to suffer harm or cause harm to others;
*682 “Is hospitalized for a serious psychiatric or psychological disorder; or
“Has exhibited seriously confused or disordered thinking that may render him/her incapable of understanding the termination of tenancy hearing process and defending against the charges.”
Blatch and NYCHA’s Procedures
In Blatch ex rel. Clay v Hernandez (supra), a class action proceeding, several mentally disabled residents of NYCHA public housing alleged, among other things, that NYCHA’s practices and procedures for conducting termination of tenancy hearings failed to adequately protect the due process rights of mentally disabled tenants. It is undisputed that petitioner is a Blatch class member.
The Blatch court found that in administrative termination of tenancy proceedings,
“[t]he undisputed evidence of record is sufficient to establish that NYCHA’s procedures were, prior to [GM 3630], and remain, generally insufficient to protect the right of tenant class members to a meaningful opportunity to be heard in opposition to NYCHA’s efforts to terminate . . . their tenancies through the administrative process.” (Blotch ex rel. Clay v Hernandez, 360 F Supp 2d at 616.)
In response to the court’s directive in Blatch, in October 2008, the parties entered into a settlement agreement that established new procedures for assessing a tenant’s mental competence and, where appropriate, providing mentally incapacitated tenants with GALs to represent them at termination of tenancy proceedings. The new procedures significantly expand the criteria a housing manager should consider when assessing the mental competence of a tenant who may be subject to a termination of tenancy.
Contentions
In support of the petition, Gray argues that she suffered from depression as early as 2002, when, as a result of the depression, she was forced to take an unpaid medical leave from her job; that the depression in 2002 caused her eviction from her previous apartment because when she was on unpaid medical leave, she was unable to pay rent (reply off, exhibit A, at 5); that she currently suffers from a depressive disorder and a host of physical ailments; and that as a result of her disabilities she was unable to adequately defend herself in the termination of tenancy *683 proceeding. Petitioner also contends that this action is timely because, when an action is commenced to compel a party to perform a duty specifically enjoined by law, the statute of limitations accrues at the time the party refuses to perform his/her duty. Petitioner states that here, the statute of limitations runs from respondent’s May 22, 2008 refusal to vacate the August 24, 2005 determination and to order a new hearing.
In opposition to the petition, NYCHA argues that the action must be dismissed as time-barred because a proceeding brought pursuant to CPLR article 78 must be commenced within four months after the administrative determination to be reviewed becomes final. NYCHA states that in this case, the decision regarding petitioner’s termination of tenancy was mailed on September 20, 2005 and the statutory period for challenging the tenancy expired approximately 29 months before this article 78 proceeding was commenced. It contends that petitioner’s correspondence in 2007 and 2008 requesting that NYCHA’s counsel vacate the 2005 determination does not revive the statute of limitations.
Moreover, NYCHA contends that NYCHA conducted petitioner’s termination of tenancy in accordance with its rules and procedures because at the time of the hearing petitioner appeared able to provide for her needs; did not appear likely to harm herself or others; had not been hospitalized for a serious psychiatric or psychological disorder; and had not exhibited seriously confused and disordered thinking. In short, it is NYCHA’s contention that in August 2005, there was no evidence that Gray suffered from a mental illness that interfered with her ability to participate in the hearing.
Discussion
Statute of Limitations
A writ of mandamus pursuant to CPLR 7803 (1) is available to compel a body or officer to perform a nondiscretionary duty enjoined upon it by law. A proceeding in the nature of mandamus to compel may be used to review administrative determinations made without a hearing and in such a case, the proceeding must be commenced, “within four months . . . after the respondent’s refusal, upon the demand of the petitioner . . . , to perform its duty.” (CPLR 217 [1]; Matter of De Milio v Borghard, 55 NY2d 216, 220 [1982]; Matter of Heck v Keane, 6 AD3d 95, 97-99 [4th Dept 2004].)
On the other hand, an article 78 proceeding for relief in the nature of a mandamus to review is the procedure for obtaining *684 judicial review of official administrative determinations where the question is whether the determination was arbitrary or capricious or affected by an error of law. In the case of mandamus to review, the article 78 proceeding must be commenced within four months after the administrative determination to be reviewed becomes final and binding on the aggrieved party. (CPLR 217 [1]; see also Matter of M & D Contrs. v New York City Dept, of Health, 233 AD2d 230 [1st Dept 1996].)
In this case, petitioner attempts to revive the statute of limitations by claiming that her termination was confirmed on May 22, 2008 when respondent decided not to reverse the earlier termination of tenancy in violation of Blatch. Petitioner’s argument is misguided. NYCHA maintains a procedure whereby a tenant may apply to a hearing officer to vacate a default or settlement which occurred while the tenant was incompetent. There is no procedure for vacating a termination of tenancy made subsequent to a hearing. Therefore, respondent’s reply denying petitioner’s e-mail request for reconsideration did not constitute a determination or a confirmation of petitioner’s tenancy. If, as petitioner argues, the e-mail correspondence requesting reconsideration tolled the statute of limitations, the four-month limitations period would “be completely emasculated if the petitioner could extend the commencement of this period” (Matter of De Milio v Borghard, 55 NY2d 216, 222 [1982]).
Additionally, petitioner argues that the statute of limitations should be extended due to her mental disability. However, the statutory period expired before that disability’s March 30, 2006 onset date (see petitioner’s exhibit C). Moreover, although CPLR 208 provides that a statute of limitations may be tolled on grounds of “insanity,” CPLR 208 is narrowly interpreted. The Court of Appeals has held that the insanity toll extends only to those who are able to prove that they were incapable of protecting their legal rights when their causes of action accrued because of an overall inability to function in society (Matter of Cerami v City of Rochester School Dist., 82 NY2d 809 [1993], reconsideration denied 83 NY2d 847 [1994]; McCarthy v Volkswagen of Am., 55 NY2d 543 [1982]). It follows that, even if petitioner’s disability onset date was within the four-month statute of limitations, petitioner would not be entitled to a tolling of that statute of limitations as petitioner does not claim that she is unable to function in society.
*685 Although the court is sympathetic to petitioner’s position and life circumstance, petitioner has not met her burden of proving that the statute of limitations was tolled. As such, the petition is untimely and is dismissed as a matter of law.
Accordingly, it is ordered that the petition is denied in its entirety.